Devane v Garg (2019 NY Slip Op 03004)





Devane v Garg


2019 NY Slip Op 03004


Decided on April 23, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 23, 2019

Renwick, J.P., Gische, Webber, Singh, JJ.


9071 155096/17

[*1]Thomas Devane, Plaintiff-Appellant,
v
Vishal Garg, Defendant-Respondent.


Rasco Klock Perez & Nieto, LLC, New York (James Halter of counsel), for appellant.
Garvey Schubert Barer, P.C., New York (Andrew J. Goodman of counsel), for respondent.



Order, Supreme Court, New York County (Lynn R. Kotler, J.), entered on or about December 13, 2018, which, to the extent appealed from, granted defendant's motion for summary judgment dismissing the cause of action for tortious interference with contract and the claim for damages on the cause of action for defamation arising from the loss of an investment banking fee, unanimously reversed, on the law, with costs, and the motion denied as to the cause of action for tortious interference with contract, and the claim for damages on both causes of action, insofar as they relate to plaintiff's share of an investment banking fee, limited to 25% of the amount that Rosenblatt Securities, Inc. actually received from defendant's company with respect to Pine Brook Capital Partners II, L.P.'s investment in defendant's company.
The motion court erred in finding, as a matter of law, that there was no agreement between plaintiff and Rosenblatt to share any fees the latter might receive if an introduction that plaintiff made resulted in a successful transaction for Pine Brook, one of Rosenblatt's investment banking clients. While plaintiff, at his deposition, could not remember any details of the conversation he had with Joseph Gawronski of Rosenblatt, he supplied those details in his affidavit in opposition to defendant's motion, and his affidavit was supported by an email that Gawronski sent long before any disputes arose (see Fields v Lambert Houses Redevelopment Corp., 105 AD3d 668, 671 [1st Dept 2013]). While Gawronski submitted an affidavit denying any agreement for Rosenblatt to pay plaintiff half of any fee it might receive on account of any investment by Pine Brook in defendant's company, he did not deny having an agreement to pay plaintiff 25% of Rosenblatt's fee, he had not been deposed at the time defendant made his motion, and any conflict between his and plaintiff's versions of events would simply create an issue of fact warranting denial of defendant's motion.
It is undisputed that plaintiff was an independent contractor, rather than Rosenblatt's employee. Thus, the principle that "a sales representative, hired at will, is not entitled to commissions after the termination of employment" (Mackie v La Salle Indus., 92 AD2d 821, 822 [1st Dept 1983], appeal dismissed 60 NY2d 612 [1983]) is not applicable to plaintiff (see Handel v STA Travel [N.Y.], 216 AD2d 177, 178 [1st Dept 1995]). Contrary to plaintiff's contention, cases about commissions apply to fees for introductions in the securities industry (see Kern, Suslow Sec. v Baytree Assoc., 264 AD2d 639, 640 [1st Dept 1999]).
Plaintiff claims that he and Gawronski agreed that he would be paid a percentage of the revenue that Rosenblatt received. He alleges that Rosenblatt was entitled to a fee of at least $1.8 million. However, the evidence does not support this allegation. The $1.8 million mentioned by plaintiff is 4% of the $45 million in Series A and Series B financing that defendant's company received. In turn, the 4% figure is based on an October 26, 2014 letter that Rosenblatt sent to defendant and Edwin McGuinn. However, the evidence shows that defendant did not sign that letter; his signature was forged. Moreover, even if (arguendo) the letter constituted a binding agreement, the fee to Rosenblatt thereunder was 2% — not 4% — because Rosenblatt and McGuinn agreed to a 50-50 split.
There is evidence in the record that one of defendant's companies paid $100,000 to Rosenblatt, but there is also evidence that one of defendant's companies agreed to pay Rosenblatt 1% of the amount that Pine Brook invested in the Series A financing (which may be the same as the $100,000).
There are issues of fact as to whether Pine Brook's investment in defendant's company resulted from plaintiff's introduction. Even if a jury were to find in plaintiff's favor, his damages — insofar as they are based on his share of Rosenblatt's investment banking fee — would be limited to 25% of the amount Rosenblatt received (whether it be $100,000 or some other sum).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: APRIL 23, 2019
CLERK